**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4505-18T3

DONALD K. CATTIE and
NANCY D. CATTIE,

     Plaintiffs-Appellants,

v.

CITY OF OCEAN CITY,

     Defendant-Respondent.

_____

Argued telephonically April 2, 2020 –
Decided September 14, 2020

Before Judges Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0042-18.

Rudolph C. Westmoreland argued the cause for appellant (Westmoreland, Vesper, Quattrone & Beers, attorneys; Rudolph C. Westmoreland, on the briefs).

Erin R. Thompson argued the cause for respondent (Birchmeier & Powell, LLC, attorneys; Erin R. Thompson, on the brief).

PER CURIAM

Plaintiffs Donald K. Cattie and Nancy D. Cattie appeal from the May 7, 2019 order of the Law Division granting summary judgment to defendant City of Ocean City and dismissing plaintiffs' personal injury claims.  We affirm.

I.

The following facts are derived from the record.  On June 14, 2017, Donald[1] participated in a parade on the city-owned boardwalk, walking behind a vehicle and distributing candy.  He alleged that his left foot caught on a nail protruding from the center of the boardwalk, causing him to fall forward and suffer serious injuries to his knee.

After he fell, Donald saw a nail protruding from the boardwalk approximately one to one-and-a-half inches.  A witness also saw the nail and estimated it was protruding between one-half and three quarters of an inch.  The witness removed the nail and gave it to a police officer at the scene.

On November 8, 2017, plaintiffs filed a complaint in the Law Division alleging the city is liable for Donald's injuries because they were caused by a dangerous condition of its property within the meaning of the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 13-10.  Plaintiffs alleged the city was on actual or

---

[1]  Because plaintiffs share a surname we use first names to avoid confusion.

constructive notice of the dangerous condition, which it failed to cure as the result of its palpably unreasonable behavior.

After the close of discovery, defendant moved for summary judgment, arguing plaintiffs cannot establish a dangerous condition of its property caused Donald's fall. In addition, defendant argued that if a dangerous condition existed it did not have actual or constructive notice of the condition. In addition to noting an absence of evidence that any city employee was aware of the nail, defendant submitted evidence that in June 2017, the boardwalk was inspected by city employees at least four times a day, Monday through Friday. A carpentry crew employed by the city made immediate repairs of any defect found during an inspection. Thus, the city argued, no reasonable fact finder could conclude the city was on constructive notice of the condition because of a failure to inspect the boardwalk. Finally, defendant argued that in light of its inspection and repair practices, no reasonable fact finder could conclude that it acted in a palpably unreasonable manner with respect to maintaining the boardwalk.

In opposition to the motion, plaintiffs produced an expert report of Jerry Lee Waldo, a former Director of Public Buildings Repair for the city. Waldo examined the nail and observed discoloration from its top to about an inch down its shank. He opined that either the discolored portion had been exposed for at

least ten years or the nail had been exposed, but hammered into the boardwalk numerous times, enlarging the area around the nail where moisture accumulated. In addition, he observed that the friction rings on the nail were worn, which allowed it to slip into and out of the boardwalk easily. Waldo noted Donald's fall took place on the oldest and most deteriorated area of the boardwalk.

Waldo opined that the nail was a dangerous condition of public property, either because it was in a raised position for ten years or because the lack of friction rings would have allowed it to migrate upward when vehicular traffic passed over the board. He opined that the city should have noticed the condition and replaced the nail, either by hammering a new nail into a different hole in the board or by hammering a larger nail into the existing hole. In a supplemental certification, Waldo clarified his opinion, stating that he did not believe the nail rose up when vehicles in the parade passed over the board into which it was nailed. He opined that his "professional opinion is that based on the fact of discoloration of the first inch of the subject nail . . . and . . . the dilapidated subject area of Ocean City's Boardwalk, the subject nail was raised for a long time, at least ten years."

In a written opinion, the trial court concluded that, even if one were to consider the nail to be a dangerous condition, plaintiffs did not prove defendant

4

had actual or constructive notice of that condition. The court held that plaintiffs' expert "offers no factual or scientific support for his conclusions as to the age of the nail . . . . He simply concludes it was there for ten (10) years and therefore [d]efendant must have [had] notice . . . ." In addition, the court held that given defendant's inspection and repair practices, no reasonable factfinder could conclude the city acted in a "palpably unreasonable" manner within the meaning of N.J.S.A. 59:4-2, even if the nail was a dangerous condition. On May 7, 2019, the trial court entered an order granting defendant's motion for summary judgment, dismissing the complaint.

This appeal followed. Plaintiffs argue the trial court erred by: (1) not holding a N.J.R.E. 104 hearing before deciding defendant's summary judgment motion; (2) misconstruing their expert's report; (3) concluding plaintiffs had not produced sufficient proof for a finding of palpably unreasonable conduct; and (4) finding there were no genuine disputes of material fact with respect to the existence of a dangerous condition.

## II.

We review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super.

162, 167 (App. Div. 1998). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a genuine issue as to a material fact and not simply one of an insubstantial nature; a non-movant will be unsuccessful merely by pointing to any fact in dispute." Prudential, 307 N.J. Super. at 167 (quotations omitted).

We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995). We owe no deference to the motion judge's conclusions on issues of law. Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

"Generally, immunity for public entities is the rule and liability is the exception." Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999). "[P]ublic entities shall only be liable for their negligence within the limitations of" the TCA. N.J.S.A. 59:1-2. The requirements of the TCA are "stringent" and place

a "heavy burden" on plaintiffs seeking to establish public entity liability.  Bligen

v. Jersey City Hous. Auth., 131 N.J. 124, 136 (1993).

Through enactment of N.J.S.A. 59:4-2, a provision of the TCA, the

Legislature waived public entity immunity for injuries caused by a dangerous

condition of public property in limited circumstances.  The statute provides, in

relevant part, as follows:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a.     a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b.     a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

N.J.S.A. 59:4-1(a) defines a dangerous condition as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably forseeable that it will be used." In order to pose a "'substantial risk of injury' a condition of property cannot be minor, trivial, or insignificant. However, the defect cannot be viewed in a vacuum. Instead, it must be considered together with the anticipated use of the property . . . . " Atalese v. Long Beach Twp., 365 N.J. Super. 1, 5 (App. Div. 2003).

N.J.S.A. 59:4-3 establishes when a public entity will be deemed to have actual or constructive notice of a dangerous condition of its property:

> a.    A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b.    A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

Finally, to establish palpably unreasonable behavior, a plaintiff has a "steep burden" to prove "more than ordinary negligence." Coyne v. State Dep't

8                                                                A-4505-18T3

of Transp., 182 N.J. 481, 493 (2005). Palpably unreasonable implies behavior by a public entity "'that is patently unacceptable under any circumstance' and that 'it must be manifest and obvious that no prudent person would approve of its course of action or inaction.'" Holloway v. State, 125 N.J. 386, 403-04 (1991) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985) (citations omitted)). An analysis of whether a public entity's behavior is palpably unreasonable involves "not only what has been done" but also the entity's "motivating concerns." Schwartz v. Jordan, 337 N.J. Super. 550, 563 (App. Div. 2001). "Simply put, the greater the risk of danger known by the Township and sought to be remedied, the greater the need for urgency." Ibid.

Although whether a public entity acted in a palpably unreasonable manner is often decided by a jury, the court may decide the question in appropriate cases. Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002). "[L]ike any question of fact, the determination of palpable unreasonableness is subject to a preliminary assessment by the court as to whether it can reasonably be made by a fact-finder considering the evidence." Charney v. City of Wildwood, 732 F. Supp. 2d 448, 457 (D.N.J. 2010) (citing Black v. Borough of Atlantic Highlands, 263 N.J. Super. 445, 451-52 (App. Div. 1993)).

After carefully reviewing the record in light of these precedents, we are satisfied that the grant of summary judgment is supported by the record. We, therefore, affirm the May 7, 2019 order for the reasons stated by the trial court in its written opinion. We add the following comments.

We agree with the trial court's finding that no reasonable fact finder could conclude that defendant's practice of inspecting and repairing the boardwalk was palpably unreasonable. As Judge Rodriguez explained in Charney, which involved a fall caused by a hole in the Wildwood boardwalk:

> Even assuming, however, that Wildwood had notice of the hole, it cannot be said that the decision to leave a one and one-half inch deep, one and one-quarter inch wide triangular hole unrepaired was palpably unreasonable. At worse, the decision to leave small boardwalk defects unrepaired was negligent. Indeed, Wildwood . . . arguably could have made more thorough and efficient repairs of the boardwalk. Perfection, however, is not required under the [TCA]. Wildwood made daily inspections of the boardwalk and repaired those defects it deemed sufficiently hazardous. . . . Wildwood's failure to remedy a small defect in a walkway surface cannot be said to constitute the kind of "outrageous" or "patently unacceptable" behavior that rises to the level of palpable unreasonableness. Imperfections in boardwalk surfaces are commonplace, and the failure of a public entity to remedy every small defect in a boardwalk simply cannot be deemed palpably unreasonable.
>
> [732 F. Supp. 2d at 458.]

To the extent we have not specifically addressed plaintiffs' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION